**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GRADY ROSS FINLEY, JR., | ) | CASE NO. 1:26-CV-00191-CEH |
| | ) | |
| Plaintiff, | ) | JUDGE CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| | ) | |
| Defendant, | ) | |

## I. Introduction

Grady Ross Finley, Jr. (" Finley, Jr." or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 10). For the reasons set forth below, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

## II. Procedural History

On November 21, 2023, Finley, Jr. filed an application for SSI, alleging a disability onset date of August 5, 2022, and claiming he was disabled due to a shoulder problem, bone spurs in the heel and foot, and a back problem. (ECF No. 11, PageID #: 558). The applications were denied initially and upon reconsideration, and Finley, Jr. requested a hearing before an administrative law judge ("ALJ"). (ECF No. 8, PageID #: 50). On April 2, 2025, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.*). During

the hearing, Claimant amended the alleged onset date to March 15, 2024. (*Id.*). On April 8, 2025, the ALJ issued a written decision finding Finley, Jr. was not disabled. (*Id.* at PageID #: 57). The ALJ's decision became final on November 26, 2025, when the Appeals Council declined further review. (ECF No. 11, PageID #: 559).

On January 23, 2026, Finley, Jr. filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 11, 12, 13). Finley, Jr. asserts the following assignment of error: "[t]he ALJ assessed an RFC finding that is unsupported by substantial evidence due to the complete absence of any opinions providing functional limitations." (*Id.* at PageID #: 558).

## III. Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Finley, Jr.'s hearing:

> The claimant testified that in March of 2024, he [was] treated at the emergency room following a motor vehicle accident and suffered a closed compression fracture of the L2 vertebrae. He stated that the fracture is healed, but he continues to experience back pain radiating down his legs from his thighs to his knees. He testified that he could stand about 10 to 15 minutes. He stated that weather changes affect his back pain, along with activity. He testified that he spends about 5 to 6 hours a day lying down and his pain is at a 7 to 8 out of 10 on a daily basis. He stated that he could stand about 5 to 10 minutes before he has to sit and could lift 15 pounds. He testified that he only takes over the counter Ibuprofen for his pain and has not been treating because of insurance issues (Hearing Testimony).
>
> . . .
>
> The claimant testified that in 2021 he worked on an assembly line for electrical parts testing light bulbs and cords. He stated that he did this for about 90 days full time through a temporary employment agency and earned $15 an hour for full-time work (Hearing Testimony). Wage records show earnings of $22,571.50 from Express Services in 2021 (Exhibit 9D). This averages about $1,881 per month, above the substantial gainful activity level. Additionally, calculating his wages for 40 hours per week at $15 an hour shows earnings of $2,598 per month, above the substantial gainful activity level.

(ECF No. 8, PageID #: 55–57).

**B. Relevant Medical Evidence**

The ALJ also summarized Finley, Jr.'s health records and symptoms:

> The claimant also suffers from the non-severe impairments of plantar fasciitis, bone spurs, cellulitis, obesity, and status post ORIF of the right fibula. In November of 2023, the claimant was diagnosed with plantar fasciitis after reporting left heel pain that hurt the most when he stood up to walk after sitting for extended periods. Physical examination showed normal gait and a left plantar surface of the calcaneus that was significantly tender with no obvious swelling. He was referred to physical therapy (Exhibit 1F/41-42). However, there is no evidence of any ongoing treatment or documented complaints related to his plantar fasciitis since the amended alleged onset date. At that same evaluation, the visit was noted to be for bone spurs, but there is no diagnostic testing to establish bone spurs and no treatment for the same (Exhibit 1F/41). In April of 2023, the claimant was diagnosed with cellulitis of the heel after reporting tenderness when touching his left plantar foot. Physical examination showed a smooth and coordinated gait, and left plantar heel pinprick dark colored puncture wound with tenderness to palpation surrounding erythema and slight edema but no warmth of drainage. He was prescribed Keflex (Exhibit 1F/14-17). However, there is no evidence of any ongoing treatment or reported symptoms. The clamant suffers from obesity with a BMI ranging from 29.54 to 30.11, barely at the diagnostic criteria for obesity (Exhibit 1F/16, 42, 4F/12). There is no evidence of any symptoms or limitations related to his obesity. The claimant is status post ORIF of the right fibula. X-rays of his right tibia and fibula showed preserved joint spaces and post ORIF changes in the proximal fibula with plate and screws. In November of 2022, he reported pain in his right lower extremity and was prescribed a walking boot and crutches (Exhibit 1F/7). However, subsequent records do not document any ongoing symptoms of right leg pain and show a smooth and coordinated gait (Exhibit 1F/16, 42).
>
> . . .
>
> In April of 2023, the claimant reported left shoulder pain radiating from his shoulder and axilla to just above his elbow. Physical examination showed some decreased range of motion due to pain, but no edema, erythema, or bruising and no focal neurologic deficits. He was not diagnosed with a medically determinable impairment, just chronic left shoulder pain. He was referred to physical therapy and instructed to take Ibuprofen (Exhibit 1F/14-17). However, there is no evidence of any ongoing treatment since the amended alleged onset date, there is no diagnostic testing in the record, and chronic left shoulder pain is a symptom, not a medically determinable impairment.
>
> . . .

[T]here is no evidence of a documented medical need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands. The claimant did not allege that he requires the use of an assistive device. Additionally, there is no evidence of a complete inability to use either upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements. He is able to perform personal care tasks, prepare meals, do laundry, draw, paint, play cards, and text message showing that he can use his upper extremities for fine and gross movements (Exhibit 3E, 6E).

. . .

In written reports, the claimant alleged difficulties with lifting, squatting, bending, walking, sitting, kneeling, climbing stairs, reaching, and using his hands. He reported that he could lift 20 to 30 pounds and could not lift more than 50 pounds. He stated that he could not sit or stand too long and could walk about 5 to 6 house lengths before he needs to rest for a few minutes. He stated that he spends his day lying around due to the pain and using cold and heat packs to ease his pain (Exhibit 3E, 6E).

. . .

The claimant suffers from lumbar degenerative disc disease with closed compression fracture of L2 lumbar vertebra. On the amended alleged onset date, the claimant presented to the emergency room following a motor vehicle collision. He reported low back pain. Physical examination showed intact sensation of his upper and lower extremities, and the ability to move all extremities with his lower extremities slightly limited secondary to low back pain (Exhibit 4F/7-8). CT scan showed an acute L2 compression fracture with 25% vertebral body loss and degenerative disc changes of the lumbar spine (Exhibit 4F/33). Neurosurgery stated that he did not need to be fitted for a brace, needed pain management, and recommended upright x-rays for further follow up and management (Exhibit 4F/34). X-rays of his lumbar spine showed compression deformity of the L2 vertebral body with approximately 25% height loss and multilevel degenerative changes of the lumbar spine resulting in moderate to severe osseous encroachment of the neural foramina at L3-L4 and L5-S1 (Exhibit 4F/56). He was discharged with a short-term prescription for Oxycodone, along with Tylenol, Ibuprofen, Lidoderm patches, and Robaxin (Exhibit 4F/34). There is no evidence of any additional treatment for the claimant's back complaints, and he testified that he only takes over the counter Ibuprofen (Hearing Testimony).

. . .

[T]he record shows only a 25% height loss from the compression fracture of his L2 vertebra and degenerative changes of his lumbar spine without nerve root involvement (Exhibit 4F/33, 56). Additionally, the claimant did not require any

> treatment for his back complaints other than acute pain management in the emergency room (Exhibit 4F/34). A neurosurgical evaluation did not find that he was surgical candidate or that he required bracing (Exhibit 4F/34). The claimant has not had any additional treatment for his back impairment since the amended alleged onset date. He alleged that this was due to his insurance not covering treatment at his location . . . .

(ECF No. 8, PageID #: 52–56).

### C. Relevant Medical Opinions

The ALJ lastly summarized the medical opinions and prior administrative medical findings:

> As for medical opinions and prior administrative medical findings, the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical findings or medical opinions, including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings as follows.
>
> State Agency medical consultant, Paul C. Fox, M.D., opined that the claimant could occasionally climb ladders, ropes and scaffolds, but that the overall evidence was insufficient to fully evaluate impairment severity and functional limitations (Exhibit 3A). The undersigned does not find the opinion to be persuasive, although it is supported by a summary of the evidence available at the time of the assessment, because additional evidence available at the hearing level showing treatment for the claimant's back on the amended alleged onset date is consistent with a limitation to occasional operation of foot controls bilaterally, never climbing ladders, ropes or scaffolds, occasional remainder of the postural maneuvers, occasional work in high exposed places, no driving an automobile, occasionally working in proximity to moving mechanical parts, occasional working in environments of extreme cold and vibration, the ability to change to standing for 5 minutes after every 25 minutes of sitting, and the ability to alternate to sitting for 5 minutes for every 25 minutes of standing and walking during which he is capable of remaining on task.
>
> State Agency medical consultant, Margel C. Guie, D.O., opined that there was insufficient evidence to assess the claimant's residual functional capacity and that he had no limitations (Exhibit 2A). The undersigned does not find the opinion to be persuasive, although it is supported by a summary of the evidence available at the time of the assessment, because additional evidence available at the hearing level showing treatment for the claimant's back on the amended alleged onset date is consistent with a limitation to occasional operation of foot controls bilaterally, never climbing ladders, ropes or scaffolds, occasional remainder of the postural maneuvers, occasional work in high exposed places, no driving an automobile,

occasionally working in proximity to moving mechanical parts, occasional working in environments of extreme cold and vibration, the ability to change to standing for 5 minutes after every 25 minutes of sitting, and the ability to alternate to sitting for 5 minutes for every 25 minutes of standing and walking during which he is capable of remaining on task.

(ECF No. 8, PageID #: 56).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant has not engaged in substantial gainful activity since March 15, 2024, the amended alleged onset date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairment: lumbar degenerative disc disease with closed compression fracture of L2 lumbar vertebra (20 CFR 416.920(c)).

. . .

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

. . .

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except:
   - He can operate foot controls bilaterally occasionally.
   - He can never climb ladders, ropes or scaffolds.
   - He can occasionally perform the remainder of the postural maneuvers.
   - He can occasionally work in high exposed places.
   - He can never drive an automobile.
   - He can occasionally work in proximity to moving mechanical parts.
   - He can occasionally work in environments of extreme cold and vibration.
   - He requires the ability to change to standing for 5 minutes after every 25 minutes of sitting and the ability to alternate to sitting for 5 minutes for every 25 minutes of standing and walking. During this time in which the individual alters position, he is capable of remaining on task.

. . .

5. The claimant is capable of performing past relevant work as an electrical accessories assembler I. This work does not require the performance of work-

related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

. . .

6. The claimant has not been under a disability, as defined in the Social Security Act, since March 15, 2024, the amended alleged onset date (20 CFR 416.920(f)).

(ECF No. 8, PageID #: 52–54, 56–57).

**V. Law & Analysis**

**A. Standard of Review**

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in

determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

**C. Discussion**

Finley, Jr. raises one issue on appeal: "[t]he ALJ assessed an RFC finding that is unsupported by substantial evidence due to the complete absence of any opinions providing functional limitations." (ECF No. 11, PageID #: 558). Claimant contends that the ALJ did not properly develop the record. (*Id.* at PageID #: 564). Claimant maintains two main arguments under this issue.

First, Claimant asserts that remand of the ALJ's determination is necessary because the ALJ did not order Claimant to complete an orthopedic consultative examination after Claimant's counsel requested an examination during the hearing. (*Id.*). Claimant proffers that his "hearing

attorney requested a consultative exam, the ALJ acknowledged one was required, [and] there is no evidence of any request for a consultative examination in the file." (*Id.* at PageID #: 565). Claimant cites to *Butcher v. Comm'r of Soc. Sec.*, No. 5:23-cv-02451, 2025 WL 20756, at *3 (N.D. Ohio Jan. 3. 2025) and relies on the Court's holding that consultative examinations "may be appropriate to secure needed medical evidence when such evidence is not in the file." (*Id.*). Further, Claimant argues that this case is unlike *Butcher* because Claimant's counsel requested a consultative examination and the plaintiff in *Butcher* did not, resulting in the Court's decision that "the ALJ has discretion in ordering a consultative examination but need not do so when Plaintiff does not request one." (ECF No. 13, PageID #: 581).

Second, Claimant challenges the adequacy of the ALJ's RFC determination by alleging that the ALJ failed to explain how he arrived at the assessed limitations or why he discounted Plaintiffs subjective reports. (*Id.* at PageID #: 564–66). Claimant's stance is that the RFC was assessed without relying on any medical opinions and that the ALJ instead interpreted raw medical data and played doctor when discounting Claimant's subjective complaints. (*Id.* at PageID #: 565–66). Specifically, Claimant argues the ALJ should have "sought to develop the record as it pertains to [Claimant's] back issues" because "there were *no* medical assessments whatsoever of any evidence related to Plaintiff's back impairment that is the basis for his disability [and t]here were no assessments of any medical evidence since the amended alleged onset date." (*Id.*). In making these arguments, Claimant relies on *Falkosky v. Comm'r of Soc. Sec.*, 1:19-cv-2632, 2020 WL 5423967, at *6–8 (N.D. Ohio Sept. 10, 2020), and *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866, at *3 (N.D. Ohio Oct. 21, 2011). (*Id.*). Claimant asserts that his case is analogous to these cases because the ALJ allegedly made medical conclusions about Claimant's imaging scans, which showed "severe degenerative disc disease and a broken back," despite

Plaintiff's limited treatment due to issues with medical insurance or access to treatment and not having a medical source review the evidence in the record. (*Id.*).

The Commissioner disagrees with Claimant and argues that the ALJ's determination is supported by substantial evidence because the ALJ properly considered the record and "reasonably concluded that Plaintiff could perform a limited range of light work." (ECF No. 12, PageID #: 571–72). The Commissioner challenges Claimant's use of *Kizys* and *Falkosky* in support of his claim because these cases "descend[] from *Deskin v. Commissioner of Social Security*, 605 F.Supp.2d 908 (N.D. Ohio 2008), and *Deskin* is not good law" (*Id.* at PageID #: 572–75). The Commissioner asserts that "*Deskin* is not consistent with governing precedent," and that "even if *Deskin* were controlling, [Claimant] would not be entitled to a remand." (*Id.* at PageID #: 572, 575). Regarding the consultative examination, the Commissioner opines that "ALJ did not indicate that a consultative examination was required . . . And after carefully considering the entire record, the ALJ concluded that Plaintiff could perform limited range of light work (Tr. 23); thereby, finding a consultative examination not necessary." (*Id.* at PageID #: 575). Additionally, the Commissioner states that the *Deskin* rule should not apply because Claimant "has not shown that there was a critical body of evidence that was not accounted for by a medical opinion," and that the ALJ "created an accurate and logical bridge" from weighing the evidence in the record "without the benefit of a medical opinion." (*Id.* at PageID #: 575, 577–79).

Before proceeding to step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 416.920(e). Under the current regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 416.920c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior

administrative medical findings" in adjudicating a claim. *Id.* The lack of a medical opinion does not automatically result in reversable error, but when the record does not contain sufficient evidence to assess functional limitations, an ALJ may not independently interpret the medical evidence to formulate an RFC without adequate evidentiary support. *Falkosky*, 2020 WL 5423967, at *5–7.

In formulating the RFC, the ALJ must "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5. Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7. Thus, "[i]n rendering his RFC decision, the ALJ must give some indication of the evidence upon which he is relying, and he may not ignore evidence that does not support his decision, especially when that evidence, if accepted, would change his analysis." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011) (citations omitted). A court "cannot uphold an ALJ's decision, even if there is 'enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Id.* at 877.

Here, the Court finds that the ALJ did not provide an accurate and logical bridge between the evidence of record and the RFC determination, preventing the Court from conducting a meaningful review of the decision. The Court has identified more than one instance in the ALJ's decision where the Court is left guessing how the ALJ evaluated medical evidence to determine Claimant's specific RFC limitations. First, there were two medical opinions that the ALJ relied on to support his RFC findings, one from State Agency medical consultant, Paul C. Fox, M.D. and the other from State Agency medical consultant, Margel C. Guie, D.O. (ECF No. 8, PageID #: 56).

While the ALJ discusses both opinions in the decision, the ALJ found both opinions unpersuasive. (*Id.*). Both Dr. Fox and Dr. Guie opined that "there was insufficient evidence" to assess Claimant's residual functional capacity. (*Id.*). While Dr. Fox assessed that "the claimant could occasionally climb ladders, ropes and scaffolds," Dr. Fox also stated that "the overall evidence was insufficient to fully evaluate impairment severity and functional limitations." (*Id.*). The ALJ did not indicate that Dr. Guie made any conclusions regarding any of Claimant's physical abilities. (*Id.*).

The ALJ stated that he found Dr. Fox and Dr. Guie's medical opinions unpersuasive because of the following:

> [A]lthough [both opinions are] supported by a summary of the evidence available at the time of the assessment, because additional evidence available at the hearing level showing treatment for the claimant's back on the amended alleged onset date is consistent with a limitation to occasional operation of foot controls bilaterally, never climbing ladders, ropes or scaffolds, occasional remainder of the postural maneuvers, occasional work in high exposed places, no driving an automobile, occasionally working in proximity to moving mechanical parts, occasional working in environments of extreme cold and vibration, the ability to change to standing for 5 minutes after every 25 minutes of sitting, and the ability to alternate to sitting for 5 minutes for every 25 minutes of standing and walking during which he is capable of remaining on task.

(*Id.*). This conclusion is insufficient because the ALJ only states that the state agency consultants' opinions are unpersuasive without adequately explaining why. Specifically, the ALJ did not properly explain what additional evidence was available at the hearing and how that evidence was inconsistent with the medical opinions. Based on the Court's review of the record, it appears that the additional evidence available at the hearing that the ALJ found was inconsistent with both medical opinions was Claimant's hearing testimony, the vocational expert's testimony, and Claimant's CT scan results from his emergency room visit on the amended alleged onset date. Even if we assume this is the additional evidence the ALJ is referring to, the ALJ still failed to build a logical bridge between this evidence and Claimant's specific RFC limitations.

Claimant challenges the ALJ's reliance on the state agency consultant's opinions because it appears that neither medical opinion considered evidence regarding Claimant's alleged back impairments stemming from the amended alleged onset date of March 15, 2026. (ECF No. 11, PageID #: 565). The state agency consultants' reports both reflect that they only reviewed evidence through November 2023. (ECF No. 8, PageID #: 93, 98). However, the ALJ acknowledged this issue when he stated that "although [both opinions are] supported by a summary of the evidence available at the time of the assessment," there was "additional evidence available at the hearing level showing treatment for the claimant's back on the amended alleged onset date." (ECF No. 8, PageID #: 56). The ultimate issue is that when the ALJ considered the CT scan taken on the amended alleged on set date alongside the state agency opinions, the ALJ did not provide a clear explanation for how the CT scan supports the specific functional limitations assessed in the RFC. The insufficiency in the ALJ's analysis here and regarding the state agency consultants' opinions and the CT scan makes the Court unable to follow the ALJ's logic and reasoning for the RFC determination.

Second, similar to *Falkosky*, "the ALJ's decision [lacks] any explanation of how he could make a detailed RFC finding when the reviewing physicians could not." *Falkosky*, 2020 WL 5423967, at *7. Both state agency consultants stated in their opinions that they believed that the evidence in the record was not enough to make a full determination regarding Claimant's abilities, and the ALJ also acknowledged the insufficiency of the evidence when the ALJ said that a consultative examination was necessary. (ECF No. 8, PageID #: 56, 77, 88). The following correspondence occurred between the ALJ and Claimant's counsel during the hearing:

> Q: Okay, well counsel, what, what, what do we do here? I mean, he's got may be a back issue that's the fracture, has been healed. I've got no diagnosis of any shoulder issue because he hasn't been to the doctor. So what, what, what's going on?

> ATTY: Well, I would submit that he should be sent to an orthopedic consultative evaluation where he could be evaluated about his ability to sit, stand, walk, lift and range of motion of shoulders.
>
> ALJ: Hmm. Alright, well, let me talk to the, vocational expert and classify the work first of all, okay?
>
> ATTY: Sure.
>
> . . .
>
> ALJ: Okay. Thank you, Mr. Zak. We will, hear from you at the next hearing, feel free to hang up. Over to you, Mr. Finley. I'm going to deliberate on the record. I feel the CE is necessary. I'll send you to a CE exam. Otherwise I'll go forth, but I need more time to deliberate on your case. Once I've made my decision, I will either, notify, I will notify you either way by the mail.
>
> (*Id.* at PageID #: 77, 88).

According to the hearing transcript, Claimant's counsel proffered that Claimant should be sent to an orthopedic consultative examination and after the vocational expert testified during the hearing, the ALJ stated that he felt the consultative examination was necessary. (*Id.*). While the Commissioner argues that the ALJ did not state that the examination was required and that the transcript should be read as the ALJ stating "I'm going to deliberate on the record. [If] I feel the CE is necessary. I'll send you to a CE exam. Otherwise I'll go forth, but I need more time to deliberate on your case," the Court disagrees with this argument. (ECF No. 12, PageID #: 575). There is no indication in the administrative record that there was an error in the hearing transcript that would justify amending the ALJ's statements regarding the consultative examination. Even if the Court adopts the Commissioner's version of the transcript, the ALJ's statement of "[o]nce I've made my decision, I will either, notify, I will notify you either way by mail," makes it clear the ALJ informed Mr. Finley, Jr. that he would be notified of whether he would have to complete an orthopedic consultative examination. (ECF No. 8, PageID #: 88). The ALJ's decision is silent on

the issue of the consultative examination and there is no evidence in the record that indicates the ALJ followed up with Mr. Finley, Jr. regarding the consultative examination.

Given that the only medical opinions discussed in the ALJ's decision both articulate a lack of evidence that prevented both doctors from making a full determination about Claimants functional limitations, this supports Claimant's argument that there was a lack of medical evidence in the record for the ALJ to reasonably rely on to make his RFC determination. It is not clear to the Court how the ALJ resolved this evidentiary concern without following through with the consultative examination after the ALJ stated it was necessary. While the ALJ said he needed more time to deliberate after the hearing, the ALJ's decision does not provide any insight on the ALJ's deliberation process regarding the consultative examination. The Court cannot decipher whether the ALJ changed his decision after the hearing and found that the record was developed enough without the consultative examination, or if the ALJ forgot to order a consultative examination before issuing his decision. Even if the Court assumed that the ALJ found that a consultative examination was not necessary when he reviewed the record after the hearing, the Court still does not have an explanation for this decision. Therefore, the Court finds that the ALJ's decision lacks a logical bridge between the ALJ's hearing testimony statements about the need for a consultative examination and his RFC determination, which does not discuss the consultative examination[1] at

[1] Although Claimant asserts one issue on appeal, he raised several sub-issues in his briefings. Because the Court finds that the ALJ failed to build an accurate and logical bridge between the evidence of record and his RFC determination, the Court need not address each of the parties' remaining arguments. The Court notes, however, the parties' arguments regarding the applicability of the *Deskin* rule. The Court need not determine whether *Deskin* is good law or whether the *Deskin* rule applies here because the concern regarding the consultative examination presents an issue of fact, not law. This case involves a factional issue distinct from the legal question addressed in *Deskin*. In cases involving the *Deskin* rule, the question generally concerns whether the record, or the absence of sufficient evidence in the record, requires the ALJ to obtain additional medical evidence, such as through a consultative examination, contacting a treating medical source, or testimony from a medical expert. Here, the concern is that the ALJ stated at the hearing that he felt a consultative examination was necessary and that he would follow up with Claimant after the hearing regarding the examination, yet neither the record nor the ALJ's decision reflects what became of this issue. Accordingly, the Court need not decide whether the law independently required a consultative examination because the ALJ stated at the hearing that an examination was necessary.

all.

While the ALJ did consider evidence in the record, it is apparent that there are valid concerns whether the record was sufficient for the ALJ to make an RFC determination based on substantial evidence. Further, the ALJ failed to adequately explain the basis for Claimant's specific RFC limitations. Because of these concerns, remand of the ALJ's decision is necessary.

**VI. Conclusion**

Based on the foregoing, the Court REVERSES the Commissioner of Social Security's nondisability finding and REMANDS this case to the Commissioner and the ALJ under Sentence Four of § 405(g).

Dated: November 2, 2026

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE